UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EVGUENIY FEDOTOV, on behalf of        :
himself and all others similarly situated,    :

                                     :              03 Civ. 8823 (CSH)
                  Plaintiff,   :

                                     :      MEMORANDUM OPINION
         -against-               :          AND ORDER
                                     :
                                     :
PETER T. ROACH AND ASSOCIATES, P.C.,   :
                                     :
              Defendant.   :
--------------------------------------------------------x

HAIGHT, Senior District Judge:

       In this case, plaintiff Evgueniy Fedotov ("Plaintiff") brings a purported class action against defendant Peter T. Roach and Associates, P.C. ("Defendant"), a law firm, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Currently pending before the Court is Defendant's Motion to Stay Proceedings in Favor of Arbitration ("the Arbitration Motion").[1] Although given the opportunity to do so, Plaintiff has not filed any papers in opposition to the Arbitration Motion.

       For the following reasons, the Arbitration Motion is granted. As a result, Defendant's Motion to Deny Class Certification is denied as moot.

---

[1] Also pending before the Court is Defendant's Motion to Deny Class Certification Pursuant to Rule 23(a)(4). The Court stayed consideration of this motion pending the Court's decision on the Arbitration Motion. *See* the Court's Memorandum and Order, dated Apr. 5, 2005 ("the 4/5/05 Order").

**BACKGROUND**

The uncontested facts are as follows.[2]  Plaintiff applied for and received a credit card issued by Citibank (South Dakota), N.A. ("the Bank").    The credit card agreements ("the Card Agreements") governing the account contain broad arbitration provisions, requiring arbitration of all claims relating to the credit card account.  The Card Agreements specify that use of the card by the cardholder manifests intent to be bound by the provisions of the Card Agreements.  Plaintiff received the first of the Card Agreements when he received his credit card, which he thereafter used; the second of the Card Agreements was sent subsequently, following which Plaintiff continued using the credit card.

At some point, Plaintiff failed to make the payments on the credit card account, and the Bank referred the matter to Defendant for debt collection.  The Bank's debt was the only debt Defendant was endeavoring to recover from Plaintiff.  Defendant sent a collection letter to Plaintiff demanding payment of $2,506.98, on behalf of the Bank.  It is the contents of that letter which form the basis of the lawsuit.

Defendant answered the complaint, then later moved for summary judgment, claiming that Plaintiff lacked standing to pursue the action.  In a Memorandum Opinion and Order dated February 3, 2005 ("the 2/3/05 Opinion"), familiarity with which is assumed, the Court denied Defendant's motion for summary judgment.[3]

---

[2] As Plaintiff has not filed any papers in opposition to the Arbitration Motion, Defendant's factual recitations made in the Arbitration Motion and supporting papers are uncontested.

[3] Defendant also moved the Court for denial of class certification (*see* 2/3/05 Opinion); as mentioned, that motion was held in abeyance pending the Court's decision on the Arbitration Motion (*see* 4/5/05 Order).

Thereafter, Defendant filed the instant Arbitration Motion, seeking to stay the proceedings in favor of arbitration, due to the existence of the arbitration provisions in the Card Agreements. Plaintiff has not opposed the motion.

## DISCUSSION

Defendant has moved, pursuant to Section 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 3-4, for a stay of these proceedings and an order compelling Plaintiff to pursue his claims against Defendant through arbitration. "The Federal Arbitration Act . . . requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (internal quotation marks and citation omitted).

The Second Circuit instructs that four factors must be addressed when determining whether a court should stay a proceeding in favor of arbitration: "[F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended for those claims to be nonarbitratable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitratable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco, Inc. v. T. Kakuichi & Co. Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted); *see Anonymous Plaintiff v. JP Morgan Chase & Co.*, No. 05 Civ. 2442, 2005 WL 2861589, at *3 (Oct. 31, 2005).

## I.    Agreement to Arbitrate

"Whether the parties agreed to arbitrate is determined by state contract law." *Kurz v.*

*Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 461 (S.D.N.Y. 2004) (citing *First*

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In the case at bar, I will apply

South Dakota law, as the Card Agreements specify that "[t]he terms and enforcement of this

Agreement shall be governed by federal law and the law of South Dakota, where [the Bank is]

located." Card Agreements at 13; *see JP Morgan Chase*, 2005 WL 2861589, at *4 (applying

Delaware law in case where credit card agreement's choice of law provision specified Delaware

law); *see also Turk v. Chase Manhattan Bank, USA, N.A.*, No. 00 Civ. 1573, 2001 WL

34644307, at *4 (S.D.N.Y. Feb. 20, 2001) (dismissing claims under New York statutes where

"credit agreement between plaintiffs and Chase identifies Delaware law as controlling").

Here, Defendant asserts that the Court should find the existence of an agreement to

arbitrate. In light of the uncontested facts and the absence of any argument or authority to the

contrary, I am inclined to agree. Under a heading labeled "Arbitration", the Card Agreement in

effect when Plaintiff began using his card stated, in part:

> PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.
> IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING
> ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT,
> INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN
> A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A
> DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR
> JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED
> THAN COURT PROCEDURES.

First Card Agreement at 9. The second of the Card Agreements, mailed to Plaintiff sometime

after the commencement of his use of the credit card, contained this same language. *See* Second

Card Agreement at 9.

Further, the Card Agreements mailed to Plaintiff specified that the cardholder would be

bound by the Card Agreements unless the cardholder cancelled the credit card account within 30

days of receipt and did not use the credit card.  *See* both Card Agreements at 1.  Plaintiff used the

credit card after receipt of both Card Agreements.[4]  Therefore, he is bound by the terms of the

Card Agreements.  *See* S.D. Codified Laws § 54-11-9 (expressly authorizing contract formation

by an individual's use of a credit card).

**II.      Scope of the Agreement to Arbitrate**

After determining that an agreement to arbitrate does, in fact, exist, the Court turns to the

question of whether the scope of that agreement covers the claims at issue here.  The U.S.

Supreme Court instructs that "any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

U.S. 614, 626 (1985).

As an initial matter, I must decide whether Defendant, who was not a party to the Card

Agreements which contain the arbitration provisions, can nonetheless claim the benefit of those

arbitration provisions.  The arbitration provisions state that, in addition to claims by or against

the Bank or the cardholder, the provisions cover claims "by or against anyone connected with

[the Bank] or [the cardholder]," including an "agent" or "representative".  Card Agreements at

10.  I believe this language is broad enough to encompass the Bank's law firm, engaged to

recover credit card debt on the Bank's behalf.  *See, e.g., Spear, Leeds & Kellogg v. Central Life

Assurance Co.*, 85 F.3d 21, 27 (2d Cir. 1996) (third-party beneficiaries may compel arbitration);

*see also* Affidavit of Jeanette Brown, vice president of a division of the Bank,  ¶ 15 (asserting

---

[4] As Plaintiff has filed no papers in response to the Arbitration Motion, Plaintiff has failed to
raise any issue regarding his receipt of the Card Agreements or use of the credit card.

that the Bank intended attorneys such as Defendant to be covered by the arbitration provision of the Card Agreements).

Next, the Court must determine whether Plaintiff's particular claims are within the scope of the agreement to arbitrate. "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks and citation omitted). In the case at bar, the arbitration provisions of the Card Agreements specify that "[a]ll Claims (defined as any dispute between the Bank and the cardholder) relating to [the cardholder's] account . . . or [the] relationship [between the Bank and the cardholder] are subject to arbitration." Card Agreements at 9. They state further that "[a]ll Claims are subject to arbitration, no matter what legal theory they are based on or what remedy . . . they seek." *Id.* Additionally, the Card Agreements specify that the arbitration clause should be interpreted "in the broadest way the law will allow it to be enforced." *Id.* at 10. From this expansive language, I have no difficulty concluding that the arbitration provisions at issue here are broad, and that, therefore, a presumption of arbitrability arises.

Moreover, I see nothing in the facts or theories of this case which would lead the Court to conclude that the presumption of arbitrability has been overcome. To the contrary, Plaintiff's claims arise out of the efforts of Defendant, as representative of the Bank, to recover only those funds owed to the Bank as a result of charges Plaintiff made on his credit card account. As such, Plaintiff's claims are covered by the agreement to arbitrate.

**III.    Arbitrability of Fair Debt Collection Practices Act Claims**

The third factor to be considered when deciding whether to stay proceedings in favor of

arbitration, *i.e.*, whether Congress intended any federal statutory claims to be nonarbitratable,

presents no barrier to arbitration in this case, as courts have found FDCPA claims to be

appropriate for arbitration.  *See Smith v. Steinkamp*, No. IP01-1290, 2002 WL 1364161 (S.D. Ind.

May 22, 2002) (granting defendants' motion to compel arbitration of FDCPA claim), *aff'd*, 318

F.3d 775 (7th Cir. 2003); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C. 2000) (same); *In re*

*Taylor*, 260 B.R. 548 (Bankr. M.D. Fla. 2000) (same).

Finally, as the only claims asserted by Plaintiff are FDCPA claims, the fourth factor is not

implicated, as all claims are appropriate for arbitration.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay Proceedings in Favor of

Arbitration is granted.  As a result, Defendant's Motion to Deny Class Certification is denied as

moot.

The Clerk of the Court is directed to transfer this action to the Court's suspense docket

pending the disposition of the arbitration proceedings.  This Court retains jurisdiction for the

purpose of adjudicating any post-award motion that either party may file.

It is SO ORDERED.

Dated: New York, New York
       March 16, 2006

                                   CHARLES S. HAIGHT, JR.
                          SENIOR UNITED STATES DISTRICT JUDGE